# Continental Can Co. v. Jessamine Canning Co. et al.

May 2, 1941.

Stoll, Muir, Townsend & Park and John L. Davis for appellant.

R. L. Bronaugh for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee Jessamine Canning Company was and is a corporation engaged in the business of canning tomatoes at its plant in Nicholasville, Kentucky. One of the buildings composing its plant is a more or less large structure in one end of which it operated its canning machinery and the other end was used for stacking and storing its canned product. It bought the cans, or some of them—into which its product was placed and sealed ready for the market—from the appellant, Continental Canning Company, which was also a corporation. At the time of the filing of this action in the Jessamine circuit court by the latter company against appellee it (ap-

pellee) owed plaintiff, for empty cans purchased of it, the sum of $1,593.21, plus interest, subject, however, to a credit of $223.66 paid on February 14, 1939, the action being filed on May 23, 1939.

At the same time plaintiff procured an attachment against defendant Jessamine Canning Company, which was levied by the sheriff of the county on a number of cases of canned tomatoes stored in its private building, as above described. After the filing of the action—but before any final relief was granted thereunder—the other two appellees, Citizens Union National Bank of Louisville, Kentucky, and Farmers Bank of Nicholasville, Kentucky, intervened in the cause and alleged prior liens in their favor on the property attached by plaintiff, and which they averred were evidenced by what they claimed were "warehouse receipts" which had been issued by an alleged warehouseman (as hereinafter pointed out) and which were pledged to each of them to secure their respective debts due them from defendant and representing loans each of them made to it. Plaintiff controverted the alleged superior or other liens of the interpleaders, followed by the filing of a stipulation of the parties as to certain facts, and by the introduction of some proof, after which the cause was submitted and the court rendered judgment dismissing plaintiff's attachment, though giving it judgment against the Canning Company for the amount of its debt, and sustained the alleged superior liens of the interpleaders—to reverse which plaintiff prosecutes this appeal.

The proof introduced, plus the agreed stipulation, indisputably shows these facts: On July 19, 1938, the defendant Canning Company had a large quantity of can goods on hand which was stacked and stored as hereinbefore indicated. It needed a considerable amount of additional funds to continue the operation of its business and to secure the persons from whom it might obtain loans its directors met and passed a resolution whereby it was agreed to place its stacked or stored can goods in the custody of its bookkeeper, one F. D. Smith, Jr., as "warehouseman." It then ran a wire partition through its building, cutting off the stored and stacked manufactured product from the other part of the building where its machinery was installed and operated, and agreed that Smith, as its warehouseman, should issue

negotiable warehouse receipts, which he did, and which were taken and pledged to the interpleaders to secure the loans which they subsequently made to the Canning Company. Smith (the alleged warehouseman) received no additional salary for any such alleged imposed duties upon him, and he continued to remain as the bookkeeper employe of the Canning Company, though he went through the form of executing a bond before the county judge and had it recorded in the county court clerk's office, although no statute relating to warehousemen who may issue such negotiable receipts prescribes for the execution of such a bond except by those operating *grain* warehouses and who are required, under the provisions of Section 4782 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, to first obtain a license from the county court clerk of the county to operate a *grain* warehouse. The following section (4783) requires the person to whom such a license is issued to execute the bond referred to. But we have been cited to no section of any statute, nor have we been able to find any, requiring such bond to be executed by a warehouseman storing other articles of goods or products.

Smith carried a key to the alleged warehouse, as did also the night watchman, and he appears to have delivered the key to any and all persons who claimed to have business in the warehouse. The stored articles (cases of canned tomatoes) were in stacks with no mark on any individual case, but with some sort of designation on each stack—the number of cases in a stack not being shown. There were other provisions in the resolution whereby defendant attempted to exercise the amalgamated authority of manufacturing canned tomatoes and that of conducting a warehouse business among which was a right to sell its stored product if the market began to decline and collect the proceeds and pay whichever interpleader held the receipt for the sold goods. There were other provisions in the resolution relating to matters not pertinent to the questions here involved—or if so they do not require being mentioned, considered or determined in view of the conclusion we have reached.

The case appears to be argued and presented by counsel for both sides without giving due weight to chapter 39 of the Acts of the First Extraordinary Session of our Legislature in 1938, and which is printed

on page 1138 of the Session Acts for that year, and appear in Baldwin's 1939 Service Supplement to the Statutes as sections 4767b-1 to and including section 4767b-61. The immediately prior section (4767b-60) repeals "all acts or parts of acts inconsistent with this act"; whilst the section immediately preceding it (4767b-59) excluded the provisions of the act from warehouse receipts made, issued and delivered before the taking effect of the act, which latter date was July 9, 1938,—ten days before the alleged creation of the warehouse, and issuing the alleged receipts pledged to and held by the interpleaders in this case. Section 4767b-58 of the 1938 Act referred to—which is section 58 of the Session Acts supra—defines terms, a part of which says: " 'Warehouseman' means a person lawfully engaged in the business of storing goods for profit." The entire act, as well as all of the terms of chapter 133 relating to warehouses and warehousemen as appearing in the 1936 Revision of Carroll's Kentucky Statutes referred to, would seem to embrace and refer to only receipts issued by persons who were engaged in the business of storing goods—not for themselves only and in their own storage room as a part of their plant—but for others as well, although by special contract no charge is made by the warehouseman for the service.

Before the enactment of the 1938 act, this court in the cases of Mechanics' Trust Co. v. Dandridge, 37 S. W. 288, 18 Ky. Law Rep. 625; Bell & Coggeshall Company v. Kentucky Glass Works Company, 48 S. W. 440, 20 Ky. Law. Rep. 1089; and Id., 106 Ky. 7, 50 S. W. 2, 20 Ky. Law Rep. 1684, held that in circumstances similar to those stipulated and proven in this case the alleged receipts issued by the alleged warehousemen in those cases did not create a lien upon the goods for which they were issued, since their issue and circulation were not in compliance with the then existing statute in this jurisdiction (chapter 133, supra), and which, of course, was before the enactment of the 1938 act above referred to. It, as we have seen, expressly defines a warehouseman who may exercise the privileges conferred by it as one "engaged in the business of storing goods *for profit*" (our emphasis)—a requirement which the preceding statute (chapter 133 of our 1936 edition) did not contain. In view of our domestic cases supra interpreting our applicable statute as it existed prior

to the enactment of the 1938 act, it becomes unnecessary to list cases from other jurisdictions interpreting similar statutes by the courts rendering them. However, under the undisputed and stipulated facts in this case the rights of the parties are to be governed by the provisions of the 1938 act which went into effect, as we have seen, on July 9, 1938, ten days before the defendant Canning Company concluded to embark in the warehouse business in the manner we have outlined; and with its selected warehouseman being taken from its list of employes and who never had charge of or in any manner stored any goods, except those belonging to his employer; nor did he ever acquire any warehouse for that purpose, but only occupied the space in one end of the Canning Company's necessary building which it theretofore devoted to the same storage purposes. Neither did the alleged warehouseman ever receive any service charge from defendant for alleged storage purposes, or himself any additional compensation for services as alleged warehouseman. It, therefore, would appear that the alleged embarkation in the warehouse business for the purpose of storing defendant's product was one of mushroom creation, as well as of like legal standing.

To uphold and give legal effect to the rights claimed by the interpleaders in this case would destroy all safeguards of statutory law enacted to provide for constructive notice of liens and incumbrances upon property by persons innocently contracting with reference thereto. The fact of the property being stored in a regular warehouse which is run and operated by a warehouseman engaged in the business for profit (as prescribed in the 1938 act) is notice to one dealing in any manner with the stored property that warehouse receipts might be outstanding against it. He is thereby warned of the necessity of informing himself with reference to the situation. But not so in the circumstances and facts of this case, the essence of which is—that the owner of any commodity of value which may be the subject of traffic in commercial transactions, may place it in his own building designated by him as a warehouse and put one of his employes in charge thereof as a warehouseman with power and authority under the law to issue warehouse receipts (with negotiable qualities) whereby they may be circulated and the holder thereof acquire su-

perior rights to the property for which they were issued, although no property of any kind belonging to others may be stored in the alleged warehouse. Such a transaction was fully described and condemned by the Federal Court in the case of In re Rodgers, 7 Cir., 125 F. 169, 179, in this language: "To uphold such a scheme would permit every merchant in the state, notwithstanding the declared policy of the state to the contrary, to have possession of large stocks, thereby inducing credit, and to cover them with secret liens, thereby deceiving creditors. It wuold, in effect, permit such merchant to pledge his entire stock without change of possession, without record of it, and without notice to the world."

Similar observation was made by this court in the second Kentucky Glass Works Company case supra [106 Ky. 7, 50 S. W. 6], where, under similar facts, like superior rights were claimed by holders of alleged warehouse receipts. In disallowing such claim we said: "Such a construction would utterly abrogate the registration laws as to personalty, and would enable a man to pledge the piano in his parlor, or the furniture in his room, by a secret pocket lien, not required to be registered." All the cases—both domestic and foreign—to which attention has been called by either counsel in the case, hold that the statute under consideration contemplated that the warehouseman issuing the involved receipts should be one engaged in that business, although he might issue such receipts, where not expressly forbidden by statute, as against his own property, provided he was then regularly in the warehouse business for profit. The unanimity of such conclusion renders it unnecessary to incorporate the cases.

If we should approve the judgment herein and adjudge the two interpleaders superior liens over plaintiff's attachment, as was done by the trial court, then all that any merchant or owner of any kind or sort of product need do in order to create a superior lien upon goods owned by him would be to conclude to annex to his business the additional one of warehouseman, to then make declaration that everything included in the building in which he operates shall be considered as stored in his warehouse, and to then issue receipts therefor containing negotiable language and thereby confer superior rights upon those to whom the receipts might be transferred. Surely no legislature, nor any court would

approve the acquisition of any such secret liens, whereby the door to the commission of fraud would be thrown wide open and our carefully prepared registration statutes become totally nullified.

Having reached that conclusion it follows that the judgment was and is erroneous, and for which reason it is reversed, with directions to set it aside and for proceedings not inconsistent with this opinion.